

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT BRIAN THOMPSON,<br><br>Defendant. | Case No. 3:24-cr- 164<br><br>15 U.S.C. §§ 78j(b) and 78ff;<br>17 C.F.R. § 240.10b-5<br>Insider Trading<br>(Count One)<br><br>18 U.S.C. § 1001(a)(2)<br>False Statement<br>(Count Two)<br><br>Forfeiture Allegation |

**CRIMINAL INFORMATION**

THE UNITED STATES ATTORNEY CHARGES THAT:

**GENERAL ALLEGATIONS**

At all times material to this Information, unless otherwise specified:

1. The Federal Reserve System ("Federal Reserve") was an agency of the United States and fulfills several roles in the national economy, including managing the nation's money supply through monetary policy, supervising and regulating bank institutions, and generally overseeing the stability of the financial system. The Board of Governors of the Federal Reserve (the "Board") is the Federal Reserve's main governing body.

2. The Federal Reserve Bank of Richmond ("FRBR"), located in Richmond, Virginia, was one of the banks that are part of the Federal Reserve. Among other things, the FRBR supervises and conducts examinations of banks that are members of the Federal Reserve and bank holding companies.

3.      Federal regulations protect certain "confidential supervisory information" ("CSI") related to the Board's and the FRBR's supervision of banks. CSI is nonpublic information and includes information that is or was created or obtained in furtherance of the Board's supervisory, investigatory, or enforcement activities such as confidential operating and condition reports, supervisory assessments, supervisory correspondence, and other supervisory communications. *See* 12 C.F.R. § 261.2(b)(1). These regulations protect CSI from being disclosed to the public without permission of the Board. *See* 12 C.F.R. §§ 261.4. CSI, including CSI in the possession of the FRBR, is the property of the Board. *See* 12 C.F.R. §§ 261.2(d)(1).

## THE DEFENDANT AND RELEVANT ENTITIES

4.      Defendant ROBERT BRIAN THOMPSON ("THOMPSON"), a resident of Mosley, Virginia, was employed by the FRBR as a bank examiner.

5.      As an employee of the FRBR, THOMPSON was required annually to file a "Form for Employees Involved with Supervision and Regulation," which is also called a "Form D." Among other things, Form D requires employees to disclose if they have any assets, including any equity interest in any banks that are members of the Federal Reserve and/or bank holding companies. When completing the Form D, FRBR employees must certify that the information they have provided is "true, complete and correct to the best of [the employee's] knowledge." The Form D also imposes an affirmative obligation on FRBR employees to report "any change that occurs after this reporting period promptly after I learn of the change." The Form D explicitly advises FRBR employees of the penalties attendant to the Form D, to include "criminal prosecution pursuant to 18 U.S.C. Section 1001 if you knowingly and willfully provide false or misleading information or fail to provide information required to be reported."

6. Bank 1 was a domestic depository institution with headquarters in Raleigh, North Carolina. Bank 1 traded on the Nasdaq, a publicly traded stock market exchange.

7. Bank 2 was a domestic depository institution with headquarters in Hicksville, New York. Bank 2 traded on the New York Stock Exchange, a publicly traded stock market exchange.

8. Brokerage 1 was a financial services company that offered, among other things, banking and brokerage services. THOMPSON maintained multiple accounts with Brokerage 1, including brokerage accounts.

9. As of 2018, THOMPSON was a Senior Manager in the Large Financial Institution ("LFI") Section of the Supervision Regulation and Credit. In that role, THOMPSON supervised and was the Deputy Central Point of Contact ("CPC") for Bank 1. In his role as Deputy CPC, THOMPSON was assigned to supervisory duties with a specific focus on Bank 1. Further, in his role THOMPSON was in frequent contact with representatives from Bank 1, and privy to confidential information, including CSI, for the purpose of assessing the overall safety and soundness of the institution.

10. As a Senior Manager and longtime employee at the FRBR, THOMPSON was privy to confidential information, including CSI, pertaining to other financial institutions, regardless of whether those particular institutions were within his official portfolio of responsibilities at the FRBR.

## COUNT ONE
(Insider Trading)

11. The allegations contained in paragraphs 1 through 10 of this Information are re-alleged and incorporated by reference as though set forth in full here.

12. From at least in or around October 2020 through in or around February 2024, the exact dates being unknown to the United States, in the Eastern District of Virginia and elsewhere,

3

the defendant, ROBERT BRIAN THOMPSON, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and of the facilities of national securities exchanges, in connection with the purchase and sale of securities, including stock issued by Bank 1 and Bank 2, employed a device, scheme, and artifice to defraud and engaged in acts, practices, and a course of business that operated and would operate as a fraud and deceit upon a person, in that defendant THOMPSON willfully executed and caused to be executed securities transactions on the basis of material nonpublic information that he used in breach of a duty of trust and confidence that he owed directly and indirectly to the Board, to the Federal Reserve, to the issuers of those securities, and to the shareholders of the issuers.

A. **Object of the Scheme to Defraud**

13. The object of the scheme was for THOMPSON to unlawfully enrich himself by using CSI and other confidential information he obtained in his capacity as an employee of the FRBR to execute trades in certain publicly traded financial institutions, including Bank 1 and Bank 2.

B. **Ways, Manner, and Means**

The ways, manner, and means by which THOMPSON sought to accomplish and did accomplish the object of the scheme included but were not limited to the following:

14. THOMPSON, as an employee of the FRBR, had access to certain confidential information, including CSI, which included, among other things: reports of examination, inspection, and violation; non-public operating, condition, and compliance reports; and communications between the FRBR and certain supervised financial institutions, including Bank 1, related to the supervision and regulation of those institutions.

15. THOMPSON, as a Senior Manager and long-time employee of the FRBR, was privy, by virtue of his specific responsibilities within the FRBR and connections within the FRBR,

4

to the CSI of other financial institutions. THOMPSON utilized his connections to request or claim a need for or entitlement to CSI of financial institutions—to include Bank 2—that were not within THOMPSON's assigned portfolio and which THOMPSON would thus not be able to acquire in the ordinary course of his assigned responsibilities.

16. To execute the scheme, THOMPSON misappropriated the CSI in violation of his duty of loyalty, trust, and confidentiality to the Board and the Federal Reserve, and used the CSI to execute trades in publicly traded financial institutions, including Bank 1 and Bank 2.

C. **Execution of the Scheme**

17. Using this CSI, THOMPSON executed 69 trades, comprising both the purchase and sale of stock, in more than seven different publicly traded financially institutions, including the purchase and sale of stock in Bank 1 and Bank 2, for a total of approximately $771,678 in personal profits.

18. To conceal the scheme, in 2020, 2021, 2022, 2023, and 2024, THOMPSON falsely represented on the FRBR's Form D both that he had no assets, including no equities in any publicly traded financial institutions, and that he had not engaged in any activity that would constitute conflicts of interest, violations of FRBR policies, or violations of law.

(In violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section § 240.10b-5.)

## COUNT TWO
(False Statements)

19. The allegations contained in paragraphs 1 through 10 of this Information are re-alleged and incorporated by reference as though set forth in full here.

20. On or about August 9, 2023, and again, on or about March 12, 2024, in the Eastern District of Virginia, within the jurisdiction of this Court, the defendant, ROBERT BRIAN

THOMPSON, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations, in relation to a matter within the jurisdiction of the Federal Reserve, an agency of the United States.

21. Specifically, on or about August 9, 2023, when completing the Federal Reserve Form D's required disclosures, which obligated THOMPSON to disclose to the Federal Reserve any "assets" within his possession since his completion of the previous year's Form D, to include "any direct or equity or debt interest . . regardless of amount, in a domestic or foreign depository institution," THOMPSON responded: "I have no assets to report." That statement and representation by defendant THOMPSON was false, because as defendant THOMPSON then and there well knew: (1) he had purchased and sold tens of thousands of shares of publicly traded depository institutions in the preceding 12 months, including Bank 1, and (2) as of the date that THOMPSON completed and signed the 2023 Form D, THOMPSON possessed shares of publicly traded depository institutions.

22. Specifically, on or about March 12, 2024, when completing the Federal Reserve Form D's required disclosures, which obligated THOMPSON to identify any "circumstances that you believe might constitute an actual or apparent conflict of interest, or violation of law or Bank policy," THOMPSON listed only his potential employment with another company and responded: "The situations listed above are complete and accurate with changes noted." That statement and representation by defendant THOMPSON was also false, because as defendant THOMPSON then and there well knew, he had purchased and sold tens of thousands of shares of publicly traded depository institutions in the preceding 12 months, including those of Bank 1 and Bank 2, in violation of law and Bank policy.

(In violation of Title 18, United States Code, Section 1001(a)(2).)

## **FORFEITURE ALLEGATION**

Pursuant to Fed. R. Crim. P. 32.2(a), ROBERT BRIAN THOMPSON is hereby notified that upon conviction of the offense in Count One of this Information, he shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

The property subject to forfeiture includes a money judgment representing the proceeds ROBERT BRIAN THOMPSON obtained in the course of the violation charged in Count One of this Information.

If any of the directly traceable forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

then it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), and as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property ROBERT BRIAN THOMPSON up to the amount of proceeds ROBERT BRIAN THOMPSON received in the course of the violation charged in Count One of this Information.

Pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p).

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____
Thomas A. Garnett
Assistant United States Attorney


GLENN S. LEON
CHIEF, FRAUD SECTION

By: _____
Della Sentilles
Trial Attorney